No. 14-1187

In The
**UNITED STATES COURT OF APPEALS**
**For the Eighth Circuit**

**LARRY FLYNT,**

Movant-Appellant,

**v.**

**GEORGE LOMBARDI, et al.,**

Defendants-Appellees.

Appeal from the United States District Court for the Western District of Missouri

**BRIEF OF *AMICI CURIAE* THE REPORTERS COMMITTEE**
**FOR FREEDOM OF THE PRESS AND 13 MEDIA ORGANIZATIONS***
**IN SUPPORT OF APPELLANT SEEKING REVERSAL**

Benjamin A. Lipman
   Lewis, Rice & Fingersh, L.C.
600 Washington Ave., Suite 2500
St. Louis, MO 63101
Tel: (314) 444-7886
blipman@lewisrice.com

Bruce D. Brown
Gregg P. Leslie
Emily R. Grannis
   The Reporters Committee for
   Freedom of the Press
1101 Wilson Blvd., Suite 1100
Arlington, VA 22209
Tel: (703) 807-2100
bbrown@rcfp.org

Counsel for *Amici Curiae* The Reporters Committee for Freedom of the Press and 13 other news media organizations

*All *amici* listed on the next page.

Appellate Case: 14-1187   Page: 1   Date Filed: 03/31/2014 Entry ID: 4138892

# LIST OF *AMICI CURIAE*

1. Advance Publications, Inc.

2. American Society of News Editors

3. Association of Alternative Newsmedia

4. Courthouse News Service

5. The E.W. Scripps Company

6. First Amendment Coalition

7. The McClatchy Company

8. MediaNews Group, Inc., d/b/a Digital First Media

9. National Press Photographers Association

10. The New York Times Company

11. Newspaper Association of America

12. POLITICO LLC

13. The Reporters Committee for Freedom of the Press

14. The Washington Post

Appellate Case: 14-1187    Page: 2    Date Filed: 03/31/2014 Entry ID: 4138892

# TABLE OF CONTENTS

LIST OF *AMICI CURIAE* .......................................................................... iii

TABLE OF CONTENTS ........................................................................... iii

TABLE OF AUTHORITIES ....................................................................... iv

IDENTITY AND INTEREST OF *AMICI CURIAE* .................................... 1

AUTHORSHIP STATEMENT ...................................................................... 2

CORPORATE DISCLOSURE STATEMENT ............................................... 3

SUMMARY OF THE ARGUMENT ............................................................. 5

ARGUMENT ............................................................................................... 8

I.   The District Court abused its discretion when it denied Flynt's motion to intervene because Flynt, like every member of the general public has a First Amendment right of access to court proceedings and documents, as well as a First Amendment right to be heard by a court seeking to seal portions of a case .......................................................................................... 8

   A.   There is a First Amendment right of access to court proceedings, including the right to be heard by a court seeking to seal portions of a case. ............. 9

       1.   Traditional strict Rule 24 standing analysis is not appropriate for parties seeking to intervene for the limited purpose of unsealing portions of court proceedings. ............................................................................. 11

       2.   Even under a strict standing analysis, a proposed intervenor suffers sufficient injury in being denied access to portions of the court record. . 12

   B.   The First Amendment right of access applies to proceedings and documents in civil and criminal cases. ...................................................... 13

II.   The standard applied by the District Court undermines the right of even the news media to seek access to court records and proceedings. ...................... 15

CONCLUSION .......................................................................................... 18

CERTIFICATE OF COMPLIANCE ......................................................... 19

CERTIFICATE OF SERVICE ................................................................... 20

APPENDIX A ............................................................................................ 21

APPENDIX B ............................................................................................ 26

Appellate Case: 14-1187    Page: 3    Date Filed: 03/31/2014   Entry ID: 4138892

# TABLE OF AUTHORITIES

## Cases

*Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470 (9th Cir. 1992)........11

*Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009).......................................................15

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ..........................................................12

*Carrelli v. Ginsburg*, 956 F.2d 598 (6th Cir. 1992) .................................................15

*Equal Employment Opportunity Comm. v. National Children's Ctr., Inc.*, 146 F.3d 1042 (D.C. Cir. 1998) ...............................................................................................11

*Gannett Co. v. DePasquale*, 443 U.S. 368 (1979)................................... 5, 10, 15, 16

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982).................... 5, 10, 16

*Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994) ......................................................................................................................11

*IDT Corp. v. eBay*, 709 F.3d 1220 (8th Cir. 2013)...................................................15

*In re Associated Press*, 162 F.3d 503 (7th Cir. 1998) ........................................ 11, 16

*In re Beef Industry Antitrust Litigation*, 589 F.2d 786 (5th Cir. 1979) ...................11

*In re Globe Newspaper Co. v. Hurley*, 920 F.2d 88 (1st Cir. 1990)........................15

*In re Iowa Freedom of Info. Council*, 724 F.2d 658 (8th Cir. 1983)......................14

*In re Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984) ...........................................16

*In re New York Times Co. to Unseal Wiretap & Search Warrants*, 557 F.3d 401 (2d Cir. 2009)......................................................................................................15

*Jessup v. Luther*, 227 F.3d 993 (7th Cir. 2000) ................................................. 11, 12

*Martindell v. International Telephone and Telegraph Corp.*, 594 F.2d 291 (2nd Cir. 1979) .........................................................................................................11

*Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159 (6th Cir. 1987) ............11

*N.Y. Civil Liberties Union v. NYC Transit Auth.*, 684 F.3d 286 (2d Cir. 2011)......14

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978)........................ 10, 14

Appellate Case: 14-1187    Page: 4    Date Filed: 03/31/2014 Entry ID: 4138892

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3rd Cir. 1994) .............................11

*Pell v. Procunier*, 417 U.S. 817 (1974) .....................................................................17

*Perez-Guerrero v. U.S. Atty. Gen.*, 717 F.3d 1224 (11th Cir. 2013).......................15

*Perry v. Brown*, 667 F.3d 1078 (9th Cir. 2012).........................................................15

*Press-Enterprise Co. v. Superior Court of California, Riverside* ("*Press-Enterprise I*"), 464 U.S. 501 (1984) ............................................................... 10, 15

*Press-Enterprise Co. v. Superior Court of California, Riverside* ("*Press-Enterprise II*"), 478 U.S. 1 (1986).........................................................................10

*Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775 (1st Cir. 1988) .......................11

*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984) ..............................14

*Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980)...................... 9, 10, 13, 17

*U.S. v. Moussaoui*, 483 F.3d 220 (4th Cir. 2007) ....................................................15

*U.S. v. Wecht*, 484 F.3d 194 (3d Cir. 2007)..............................................................15

*United Nuclear Corp. v. Cranford Insurance Co.*, 905 F.2d 1424 (10th Cir. 1990) ....................................................................................................................11

*Washington Legal Foundation v. U.S. Sentencing Com'n*, 89 F.3d 897 (D.C. Cir. 1996) ....................................................................................................................15

## Other Authorities

Lucas A. Powe, Jr., The Fourth Estate and the Constitution (1992) .......................16

Nicolas Cornell, Note, *Overbreadth and Listeners' Rights*, 123 Harv. L. Rev. 1749 (2010).................................................................................................................13

RonNell Andersen Jones, *Litigation, Legislation and Democracy in a Post-Newspaper America*, 68 Wash. & Lee L. Rev. 557 (2011)...................................16

Appellate Case: 14-1187     Page: 5     Date Filed: 03/31/2014 Entry ID: 4138892

## IDENTITY AND INTEREST OF *AMICI CURIAE*

*Amici curiae* are The Reporters Committee for Freedom of the Press and 13 media organizations – Advance Publications, Inc., American Society of News Editors, Association of Alternative Newsmedia, Courthouse News Service, The E.W. Scripps Company, First Amendment Coalition, The McClatchy Company, MediaNews Group, Inc., d/b/a Digital First Media, National Press Photographers Association, The New York Times Company, Newspaper Association of America, POLITICO LLC, and The Washington Post. *Amici* are described in more detail in Appendix A. Pursuant to F.R.A.P. 29(a) this brief is filed with the consent of all parties.

This case centers on the question of whether an individual, Larry Flynt, may be permitted to intervene in the District Court to challenge certain of the District Court's orders sealing portions of this case from public view, but it carries broad implications for the general public and for the news media, in particular. The District Court denied Flynt the right to be heard on whether the District Court's decision to seal portions of the case was constitutional. The basis for the denial was that Flynt has only a "generalized interest in" the subject of the litigation.

Members of the media routinely seek access to court cases with the generalized interest of reporting on what happens and what has been filed in the cases. Courts traditionally have permitted the media to intervene under F.R.C.P.

1

24(b) to challenge sealing orders, recognizing that the media's important role as a watchdog in our system satisfies the standing analysis required for intervention.

As advocates for the media and the media's ability to gather information from courts and disseminate information to the public, *amici* have a strong interest in ensuring journalists and members of the public continue to be able to intervene in order to challenge court secrecy and access court records.

If the District Court's short denial of Flynt's request to intervene in this case is allowed to stand, it would make it nearly impossible for any member of the media or the general public to intervene to similarly seek to unseal records. This case has implications beyond the outcome for the parties directly involved, and could make it difficult for the news media to adequately represent and protect the public's interest in future court-closure actions.

## AUTHORSHIP STATEMENT

Pursuant to Federal Rule of Appellate Procedure 29(c)(5), *amici* declare:

1. no party's counsel authored the brief in whole or in part;

2. no party or party's counsel contributed money intended to fund preparing or submitting the brief; and

3. no person, other than *amici*, their members or their counsel, contributed money intended to fund preparing or submitting the brief.

Appellate Case: 14-1187    Page: 7    Date Filed: 03/31/2014 Entry ID: 4138892

# CORPORATE DISCLOSURE STATEMENT

The Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

Advance Publications, Inc. has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

American Society of News Editors is a private, non-stock corporation that has no parent.

Association of Alternative Newsmedia has no parent corporation and does not issue any stock.

Courthouse News Service is a privately held corporation with no parent corporation and no publicly held corporation holds more than 10 percent of its stock.

The E.W. Scripps Company is a publicly traded company with no parent company. No individual stockholder owns more than 10% of its stock.

First Amendment Coalition is a nonprofit organization with no parent company. It issues no stock and does not own any of the party's or amicus' stock.

The McClatchy Company is publicly traded on the New York Stock Exchange under the ticker symbol MNI. Contrarius Investment Management Limited owns 10% or more of the common stock of The McClatchy Company.

Appellate Case: 14-1187     Page: 8     Date Filed: 03/31/2014 Entry ID: 4138892

MediaNews Group, Inc. is a privately held company. No publicly-held company owns ten percent or more of its equity interests.

National Press Photographers Association is a 501(c)(6) nonprofit organization with no parent company. It issues no stock and does not own any of the party's or amicus' stock.

The New York Times Company is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. No publicly held company owns 10% or more of its stock.

Newspaper Association of America is a nonprofit, non-stock corporation organized under the laws of the commonwealth of Virginia. It has no parent company.

POLITICO LLC is a wholly owned subsidiary of privately held Capitol News Company, LLC.

WP Company LLC d/b/a The Washington Post is a wholly owned subsidiary of Nash Holdings LLC. Nash Holdings LLC is privately held and does not have any outstanding securities in the hands of the public.

4

## SUMMARY OF THE ARGUMENT

On November 9, 2013, Appellant Larry Flynt, who was not a party to the underlying action, filed motions in the District Court in *Zink v. Lombardi* and *Ringo v. Lombardi* seeking to intervene for the sole purpose of challenging the District Court's decisions to seal portions of the cases. On December 26, 2013, the District Court denied Mr. Flynt's motion to intervene, refusing to allow Mr. Flynt an opportunity to be heard on whether the First Amendment prohibits the District Court's seal orders. The District Court entered an order denying Mr. Flynt's motion to intervene in a two-sentence text only entry. The entry stated, "Flynt's Motion for Reconsideration [177] is DENIED. A generalized interest in a subject of litigation does not justify intervention."

The District Court's Order is contrary to 35 years of United States Supreme Court and lower federal court jurisprudence stating the public has a First Amendment right of access to the courts, including a constitutional right to have a challenge to closure heard by the court. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 410 (1979) (Powell, J., concurring). The constitutional right to be heard necessarily carries with it and, in fact, is synonymous with standing to be heard.

Public access to court proceedings is the linchpin of public acceptance of the legitimacy and credibility of judicial institutions. The public's right of access has

Appellate Case: 14-1187     Page: 10     Date Filed: 03/31/2014 Entry ID: 4138892

long been understood as a right held by the public at large under the First Amendment and at common law, with the news media often acting as a proxy – but not a substitute – for the general public. The U.S. Supreme Court has recognized that the public has a First Amendment right to notice and an opportunity to be heard before a court removes portions of its proceedings from public view. The District Court's Order denying Flynt the right to intervene by concluding he lacked standing interferes with the most basic constitutional commandments and common-law traditions underlying the law of access to courts.

The public and the press have always been understood to have equal access to court records and court proceedings under the First Amendment. In practice, it is often traditional news media outlets litigating for access to proceedings or records, but that does not mean other organizations or individuals lack standing to vindicate the public's access rights. *Amici*, as news media organizations, often represent the public interest by pressing for court access and also by educating the public about how the judicial system operates.

Despite the clear Supreme Court precedent on a First Amendment right to intervene to challenge court sealing orders, the District Court in this case denied Flynt his opportunity to be heard. If that decision is allowed to stand, it will undermine a right shared by all members of the public and it will specifically harm the news media. The Supreme Court has made clear that the public and the news

6

media have co-extensive First Amendment rights. Any move to undermine a member of the public's right to intervene to challenge standing also undermines the media's right to intervene, and limits a fundamental First Amendment right.

*Amici* request 10 minutes of oral argument time, but only if *amicus* argument time does not come out of the parties' time.

Appellate Case: 14-1187    Page: 12    Date Filed: 03/31/2014 Entry ID: 4138892

# ARGUMENT

**I.** **The District Court abused its discretion when it denied Flynt's motion to intervene because Flynt, like every member of the general public has a First Amendment right of access to court proceedings and documents, as well as a First Amendment right to be heard by a court seeking to seal portions of a case.**

There is a First Amendment right of access possessed by all members of the public to court proceedings and to documents filed with courts as part of those proceedings. The First Amendment right of access includes the constitutional right for members of the public to be heard by a court that has closed or is seeking to close proceedings and records. The right to be heard necessarily means a member of the public has standing to challenge a court order closing proceedings or records.

The United States Supreme Court explicitly recognized the constitutional right of access and its concomitant right to be heard in cases involving access to criminal proceedings. The logic applied by the Supreme Court in those cases, as well as dicta by the Supreme Court and the weight of authority from lower courts has found a common law right of access in civil cases. The weight of authority in the Circuits also applies the right of access in cases involving court documents, and the Supreme Court has found a common law right to access to court documents that also would confer standing to intervene when documents are sealed.

8

**A.      There is a First Amendment right of access to court proceedings, including the right to be heard by a court seeking to seal portions of a case.**

In *Richmond Newspapers v. Virginia*, 448 U.S. 555, 564-75 (1980), the

Supreme Court, applying the First Amendment, examined at great length the

history of openness in trials and its importance to the public.  The Court held,

> [p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.  When a criminal trial is conducted in the open, there is at least an opportunity both for understanding the system in general and its workings in a particular case.

*Id.* at 572.  Therefore, the Supreme Court held, "the right to attend criminal trials is

implicit in the guarantees of the First Amendment; without the freedom to attend

such trials, which people have exercised for centuries, important aspects of

freedom of speech and 'of the press could be eviscerated.'  [Internal citations

omitted.]"  *Id.* at 556-557.  As a result, "the First Amendment guarantees of speech

and press, standing alone, prohibit government from summarily closing courtroom

doors which had long been open to the public at the time that amendment was

adopted."  *Id.* at 576.

The Supreme Court has explained that a public right of access dates back to

England and colonial America.  *See Richmond Newspapers*, 448 U.S. at 564

("[T]hroughout its evolution, the trial has been open to all who care to observe.").

9

New Jersey's colonial charter, for instance, allowed "any person or persons" to "freely come" to civil or criminal trials. *Id.* at 567 (citation omitted).

The Supreme Court did not stop at finding a right of access devoid of procedural safeguards to enforce it. In *Globe Newspaper Co. v. Superior Court*, 457 U.S. at 609 n.25, the Supreme Court further stated, "[o]f course,… representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion.'" *Id.* (citing *Gannett Co. v. DePasquale*, 443 U.S. at 410 (Powell, J., concurring)).

Other key Supreme Court access cases – *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), *Press-Enterprise Co. v. Superior Court of California, Riverside* ("*Press-Enterprise I*"), 464 U.S. 501 (1984), and *Press-Enterprise Co. v. Superior Court of California, Riverside* ("*Press-Enterprise II*"), 478 U.S. 1 (1986) – do not question whether the party seeking access has standing. These cases establish a presumption of a right of access based on the important public interests at stake without pausing to consider whether the parties have demonstrated any particular harm. Instead, the public interest in access, by itself, is enough.

Not surprisingly, nearly every Circuit Court to rule on the issue has determined, in light of the right to be heard recognized in *Globe Newspaper* and *Gannett v. DePasquale*, that not only is F.R.C.P. 24(b) the proper mechanism for members of the public who seek to challenge closure, *see, e.g., In re Associated*

10

*Press*, 162 F.3d 503, 507 (7th Cir. 1998); *Equal Employment Opportunity Comm. v. National Children's Ctr., Inc.*, 146 F.3d 1042 (D.C.Cir. 1998); but that standing necessarily is satisfied in such cases as a result of the right to access. *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000) ("There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order.") (quoting *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992)). *See also Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir. 1988); *Martindell v. International Telephone and Telegraph Corp.*, 594 F.2d 291, 294 (2nd Cir. 1979); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3rd Cir. 1994); *In re Beef Industry Antitrust Litigation*, 589 F.2d 786, 789 (5th Cir. 1979); *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir. 1987); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896 (7th Cir. 1994); *Beckman Industries, Inc. v. International Insurance Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *United Nuclear Corp. v. Cranford Insurance Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *National Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Therefore, the District Court erred when it denied Flynt's motion to intervene.

**1. Traditional strict Rule 24 standing analysis is not appropriate for parties seeking to intervene for the limited purpose of unsealing portions of court proceedings.**

Appellate Case: 14-1187    Page: 16    Date Filed: 03/31/2014 Entry ID: 4138892

In intervention cases presenting unsealing requests, the circuits have correctly applied a more lenient test to determine whether a proposed intervenor has standing to request access, allowing such intervention by "those whose legal interests will be directly and substantially affected by the course of the litigation." *Jessup*, 227 F.3d at 998. The *Jessup* court went on to specify that a newspaper's "right of access to court proceedings and documents born of the common law and the First Amendment" is just such a legal interest that is "directly and substantially affected by the course of the litigation." *Id*.

Like any media outlet would, Flynt has a legitimate interest in gaining access to the records the lower court has sealed. Even if that interest is "generalized," it will be "directly and substantially affected" if he is not permitted to intervene. In his capacity as a representative of the public, which also has a keen interest in gaining access to the information the lower court has sealed, Flynt meets the more relaxed standing requirements for limited intervention.

        **2.    Even under a strict standing analysis, a proposed intervenor suffers sufficient injury in being denied access to portions of the court record.**

Although the Supreme Court has not demanded a showing of standing before allowing an access action, it is nonetheless clear that denial of information at the heart of democratic process would suffice as a harm that establishes standing. *See Broadrick v. Oklahoma*, 413 U.S. 601, 611-12 (1973) (explaining

12

that because the First Amendment requires "breathing space," standing rules are relaxed in constitutional challenges of state action and litigants can sue for violations of others' rights). *See also* Nicolas Cornell, Note, *Overbreadth and Listeners' Rights*, 123 Harv. L. Rev. 1749 (2010) ("Insofar as the First Amendment protects a general right of the citizenry to open and undistorted discourse, such a right is an appropriate basis for standing."). As discussed above, there is a presumption of openness in this country's courts under the First Amendment. Denial of access to records that are presumptively public is an injury, and Flynt has suffered that injury, elevating him beyond a "generalized interest in [the] subject of litigation." Therefore, Flynt and the general public including members of the media have standing to challenge an order closing court proceedings and records.

**B.    The First Amendment right of access applies to proceedings and documents in civil and criminal cases.**

The First Amendment right of access is based on the historic openness of criminal proceedings, and the same rationale leads to the conclusion that the right applies to civil cases, as well. The Supreme Court, itself, has suggested civil and criminal cases are indistinguishable in this regard. *Richmond Newspapers*, 448 U.S. at 580, n.17 ("Whether the public has a right to attend trials of civil cases is a question not raised by his case, but we note that historically both civil and criminal trials have been presumptively open.") Once again, not surprisingly, the vast majority of Circuits have found the public has a First Amendment right of access

13

in civil cases.  *See, e.g., N.Y. Civil Liberties Union v. NYC Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2011); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984); *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 700 (6th Cir. 2002).

Moreover, the Supreme Court has found a common law right of access to documents which would, in any event, provide Flynt and the public with standing to challenge the District Court's order sealing portions of the case below.  In *Nixon v. Warner Communications*, the Supreme Court recognized the common-law right of access to judicial documents, and noted a presumptive right of access based on nothing more than a citizen's desire to hold the government accountable:

> It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.  In contrast to the English practice, American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit.  The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies, and in a newspaper publisher's intention to publish information concerning the operation of government.

*Nixon*, 435 U.S. at 597-598 (citations and footnotes omitted).  At issue in *Nixon* was access to presidential tapes during a trial of Watergate conspirators.  The Supreme Court did not presume that Warner Communications had standing only because it had thrust itself into coverage of the Watergate investigation.  Rather, the Court clearly would have entertained an action for access by any citizen with a "watchful eye."  *Id.  See also In re Globe Newspaper Co. v. Hurley*, 920 F.2d 88,

14

96 (1st Cir. 1990); *In re New York Times Co. to Unseal Wiretap & Search Warrants*, 557 F.3d 401, 405 (2d Cir. 2009); *U.S. v. Wecht*, 484 F.3d 194, 208 (3d Cir. 2007); *U.S. v. Moussaoui*, 483 F.3d 220, 234, n. 10 (4th Cir. 2007); *Carrelli v. Ginsburg*, 956 F.2d 598, 606 (6th Cir. 1992); *Bond v. Utreras*, 585 F.3d 1061, 1074 (7th Cir. 2009); *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013); *Perry v. Brown*, 667 F.3d 1078, 1084 (9th Cir. 2012); *Perez-Guerrero v. U.S. Atty. Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013); *Washington Legal Foundation v. U.S. Sentencing Com'n*, 89 F.3d 897, 898 (D.C. Cir. 1996).

## II. The standard applied by the District Court undermines the right of even the news media to seek access to court records and proceedings.

When media organizations have sued for access, the Supreme Court has repeatedly framed the right of access as a right of the public generally, not a right unique to the press. *See Gannett*, 443 U.S. at 370 (framing issue as whether "members of the public" can attend pre-trial proceedings); *Press-Enterprise I*, 464 U.S. at 508 (finding that "everyone in the community" can attend voir dire). In *In re Associated Press*, the Seventh Circuit made clear that a district court's refusal to allow a media company to intervene for the purposes of challenging a sealing order was error. In doing so, the court also clearly stated that the general public would have the same standing to intervene to challenge the seal:

> To facilitate a trial court's case-by-case determination of closure, "representatives of the press *and general public* 'must be given an

Appellate Case: 14-1187     Page: 20     Date Filed: 03/31/2014 Entry ID: 4138892

opportunity to be heard on the question of their exclusion' " from the proceedings or access to documents.

*In re Associated Press*, 162 F.3d at 508 (emphasis added) (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 234 (4th Cir. 1984) (quoting *Globe Newspaper Co. v. Sup. Ct. for Norfolk Cty*, 457 U.S. at 609 n. 25 (1982) (quoting *Gannett Co.*, 443 U.S. at 401, 99 S.Ct. 2898))). As access is a public right, any member of the public who has been excluded from a courtroom can intervene.

Consequently, the holdings of *Richmond Newspapers* and other access cases are not about "media-specific rights." RonNell Andersen Jones, *Litigation, Legislation and Democracy in a Post-Newspaper America*, 68 Wash. & Lee L. Rev. 557, 627 (2011). Instead, the cases are a "bold statement on the needs of 'people in an open society' and the value of public observation in government proceedings." *Id*. Indeed, in oral argument in *Richmond Newspapers*, Chief Justice Warren E. Burger asked the news outlet's attorney whether there is a difference between "a person who wants to attend [a trial] to write something or just make a speech about it." Lucas A. Powe, Jr., The Fourth Estate and the Constitution 244 (1992). The lawyer, Lawrence Tribe, replied, "None, nor if he just wanted to *inform himself as a citizen*." *Id*. (emphasis added).

Cases outside of the court-access area also show that the press and public's rights of access are generally co-extensive in other ways. When news outlets have challenged statutes that prohibit the general public from interviewing prison

16

inmates, courts have declined to find that journalists have special access rights under the Constitution. Instead, they have said that reporters have no First Amendment newsgathering rights "not available to the public generally." *Pell v. Procunier*, 417 U.S. 817, 834 (1974). Such a determination reiterates that members of the public and reporters share the same rights to watch a trial or read judicial opinions; neither's interest is generally greater than the other, but both are sufficient to advance an action for public access.

The District Court ignored Supreme Court precedent when it denied Flynt standing because it found that he had only "[a] generalized interest in the subject of litigation," which did "not justify intervention." Docket Text Order, Dec. 26, 2013. The *Richmond Newspapers* line of cases and *Broadrick* show that because access to court information is a public right, anyone who wants access has standing to pursue it. As *Richmond Newspapers* explains, "what transpires in the courtroom is public property." 448 U.S. at 593 (citation omitted). Potential harm to the public debate and erosion in confidence to the judicial system is an injury that everyone shares when access rights are denied.

The District Court's standard would directly threaten the traditional ability of the news media to fight for access. News organizations typically have no more than a "generalized interest" in litigation; in fact, there are ethical considerations and difficulties involved in covering a case where a news organization has more

17

stake than a "generalized interest." The District Court's order ignores the constitutionally compelled mandate of *Richmond Newspapers*: that access is a right that everyone has and that an abridgement of that right harms the public's right to hold its government accountable. In so doing, it undermines not only Flynt's right to be heard, but the right of the general public and the news media as well. This Court should protect the public's and the media's right to intervene.

## CONCLUSION

For the reasons stated above, this Court should reverse the District Court's December 26, 2013, denial of Flynt's motion to intervene for the limited purpose of challenging sealing orders.

Respectfully submitted,

 /s/ Bruce D. Brown
BRUCE D. BROWN
The Reporters Committee for
    Freedom of the Press
1101 Wilson Blvd., Suite 1100
Arlington, VA 22209
Phone: (703) 807-2100
Fax: (703) 807-2109

18

## CERTIFICATE OF COMPLIANCE

I, Bruce D. Brown, do hereby certify: (1) Brief of *Amici Curiae* complies with the type-volume limitation Fed. R. App. P. 32(a)(7)(B) because it contains 3,677 words, according to the word count of Microsoft Office Word 2010; (2) Brief of *Amici Curiae* complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Times New Roman; and (3) Brief of *Amici Curiae* has been scanned for viruses and is virus free.

/s/   Bruce D. Brown

Appellate Case: 14-1187    Page: 24    Date Filed: 03/31/2014 Entry ID: 4138892

## CERTIFICATE OF SERVICE

I, Bruce D. Brown, do hereby certify that I have filed the foregoing Brief of *Amici Curiae* electronically with the Court's CM/ECF system with a resulting electronic notice to all counsel of record on March 27, 2014. Upon approval and filing of this Brief, a true and correct paper copy of the Brief with updated Certificate of Service will be sent via first-class mail, postage pre-paid to counsel of record.

/s/   Bruce D. Brown

# APPENDIX A

Descriptions of *amici*:

The Reporters Committee for Freedom of the Press is a voluntary, unincorporated association of reporters and editors that works to defend the First Amendment rights and freedom of information interests of the news media. The Reporters Committee has provided representation, guidance and research in First Amendment and Freedom of Information Act litigation since 1970.

Advance Publications, Inc., directly and through its subsidiaries, publishes 18 magazines with nationwide circulation, newspapers in over 20 cities and weekly business journals in over 40 cities throughout the United States. It also owns many Internet sites and has interests in cable systems serving over 2.3 million subscribers.

With some 500 members, American Society of News Editors ("ASNE") is an organization that includes directing editors of daily newspapers throughout the Americas. ASNE changed its name in April 2009 to American Society of News Editors and approved broadening its membership to editors of online news providers and academic leaders. Founded in 1922 as American Society of Newspaper Editors, ASNE is active in a number of areas of interest to top editors

Appellate Case: 14-1187    Page: 26    Date Filed: 03/31/2014 Entry ID: 4138892

with priorities on improving freedom of information, diversity, readership and the credibility of newspapers.

Association of Alternative Newsmedia ("AAN") is a not-for-profit trade association for 130 alternative newspapers in North America, including weekly papers like The Village Voice and Washington City Paper. AAN newspapers and their websites provide an editorial alternative to the mainstream press. AAN members have a total weekly circulation of seven million and a reach of over 25 million readers.

Courthouse News Service is a California-based legal news service for lawyers and the news media that focuses on court coverage throughout the nation, reporting on matters raised in trial courts and courts of appeal up to and including the U.S. Supreme Court.

The E.W. Scripps Company is a diverse, 131-year-old media enterprise with interests in television stations, newspapers, local news and information websites and licensing and syndication. The company's portfolio of locally focused media properties includes: 19 TV stations (ten ABC affiliates, three NBC affiliates, one independent and five Spanish-language stations); daily and community newspapers

Appellate Case: 14-1187    Page: 27    Date Filed: 03/31/2014 Entry ID: 4138892

in 13 markets; and the Washington-based Scripps Media Center, home of the Scripps Howard News Service.

First Amendment Coalition is a nonprofit public interest organization dedicated to defending free speech, free press and open government rights in order to make government, at all levels, more accountable to the people. The Coalition's mission assumes that government transparency and an informed electorate are essential to a self-governing democracy. To that end, we resist excessive government secrecy (while recognizing the need to protect legitimate state secrets) and censorship of all kinds.

The McClatchy Company, through its affiliates, is the third-largest newspaper publisher in the United States with 30 daily newspapers and related websites as well as numerous community newspapers and niche publications.

MediaNews Group's more than 800 multi-platform products reach 61 million Americans each month across 18 states.

The National Press Photographers Association ("NPPA") is a 501(c)(6) non-profit organization dedicated to the advancement of visual journalism in its

Appellate Case: 14-1187    Page: 28    Date Filed: 03/31/2014 Entry ID: 4138892

creation, editing and distribution. NPPA's approximately 7,000 members include television and still photographers, editors, students and representatives of businesses that serve the visual journalism industry. Since its founding in 1946, the NPPA has vigorously promoted the constitutional rights of journalists as well as freedom of the press in all its forms, especially as it relates to visual journalism. The submission of this brief was duly authorized by Mickey H. Osterreicher, its General Counsel.

The New York Times Company is the publisher of The New York Times, The Boston Globe, and International Herald Tribune and operates such leading news websites as nytimes.com and bostonglobe.com.

Newspaper Association of America ("NAA") is a nonprofit organization representing the interests of more than 2,000 newspapers in the United States and Canada. NAA members account for nearly 90% of the daily newspaper circulation in the United States and a wide range of non-daily newspapers. The Association focuses on the major issues that affect today's newspaper industry, including protecting the ability of the media to provide the public with news and information on matters of public concern.

Appellate Case: 14-1187    Page: 29    Date Filed: 03/31/2014 Entry ID: 4138892

POLITICO LLC is a nonpartisan, Washington-based political journalism organization that produces a series of websites, video programming and a newspaper covering politics and public policy.

WP Company LLC (d/b/a The Washington Post) publishes one of the nation's most prominent daily newspapers, as well as a website, www.washingtonpost.com, that is read by an average of more than 20 million unique visitors per month.

Appellate Case: 14-1187    Page: 30    Date Filed: 03/31/2014 Entry ID: 4138892

# APPENDIX B

*Of counsel*:

Richard A. Bernstein
Sabin, Bermant & Gould LLP
4 Times Square, 23rd Floor
New York, NY 10036
*Counsel for Advance Publications,*
*Inc.*

Kevin M. Goldberg
Fletcher, Heald & Hildreth, PLC
1300 N. 17th St., 11th Floor
Arlington, VA 22209
*Counsel for American Society of News*
*Editors*

Kevin M. Goldberg
Fletcher, Heald & Hildreth, PLC
1300 N. 17th St., 11th Floor
Arlington, VA 22209
*Counsel for Association of Alternative*
*Newsmedia*

Rachel Matteo-Boehm
Bryan Cave LLP
560 Mission Street, Suite 2500
San Francisco, CA 94105
*Counsel for Courthouse News Service*

David M. Giles
Vice President/
Deputy General Counsel
The E.W. Scripps Company
312 Walnut St., Suite 2800
Cincinnati, OH 45202

Peter Scheer
First Amendment Coalition
534 Fourth St., Suite B
San Rafael, CA 94901

Karole Morgan-Prager
Juan Cornejo
The McClatchy Company
2100 Q Street
Sacramento, CA 95816

David S. Bralow
General Counsel
MediaNews Group
448 Lincoln Highway
Fairless Hills, PA 19030

Mickey H. Osterreicher
1100 M&T Center, 3 Fountain Plaza,
Buffalo, NY 14203
*Counsel for National Press*
*Photographers Association*

David McCraw
V.P./Assistant General Counsel
The New York Times Company
620 Eighth Avenue
New York, NY 10018

Kurt Wimmer
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
*Counsel for the Newspaper*
*Association of America*

Appellate Case: 14-1187    Page: 31    Date Filed: 03/31/2014 Entry ID: 4138892

Jerald N. Fritz
Vice President and General Counsel
POLITICO LLC
1000 Wilson Blvd., Suite 2700
Arlington, VA 22209

John B. Kennedy
James A. McLaughlin
Kalea S. Clark
The Washington Post
1150 15th Street, N.W.
Washington, D.C. 20071

Appellate Case: 14-1187    Page: 32    Date Filed: 03/31/2014 Entry ID: 4138892